All right, our final case for today is United States v. Smith, and we will hear again from Mr. Hillis. May it please the Court, Daniel Hillis for Mr. Smith, counsel. Mr. Smith raises two claims, and I'll address first the potential waiver, because the government says there was one. We don't think that there was. I'm going to rely on Kappas, because Kappas said that uncontested conditions are reviewed for plain air. It didn't say that they result in waiver. We have since had Gamilla, but Gamilla doesn't, I think, squarely address the situation and likes to assume that there should be waiver, or rather endeavors to assume that there should be a waiver if there's a strategic reason not to contest something and there's silence. But strategic reasoning seems to go to ineffective assistance of counsel claims, not to plain air issues. So what you have to address, I think, maybe among other things, is the point at which Mr. Kadzai says, we feel they are reasonable. The Court's rattled off all these numbers, including discretionary conditions of supervised release, which includes number 7, the alcohol one, and number 16, the visitation one. The Court says, all right, Mr. Kadzai, do you have any objection to those? Mr. Kadzai, we feel they are reasonable. So that's more than some, less than others, right? So that's the reason one might find waiver. Sure. And to that, I'll say, Kappas, they agreed to conditions there. They were all vacated on appeal, plain air or whatever the standard has now become. It wasn't enough to say that somebody agreed. And I can answer by analogy, too, Your Honor, if I may, that if we have criminal history that somebody agrees to, if we have a restitution amount that somebody agrees to, if we have an enhancement that somebody agrees to, but they're all wrong, we can come up on appeal and argue under plain air, even though somebody agreed under that circumstance, which is all part of the sentence, by the way, that we can nevertheless challenge those things on the appeal. And I'll point to Seals, Jenkins, and Anderson as examples of those three topics that I just gave, in addition to Kappas, which squarely addresses an uncontested condition. We didn't find waiver in Kappas. We didn't find waiver in Seals, Gill, Jenkins, Anderson, any of those cases. Silence doesn't do it. Filing a commentary that addresses something else, you might say strategic, picking and choosing, that doesn't do it either. Prior notice. They put you in plain air. Prior notice. What do you say? Sure. They all look reasonable to us. Fine. And then on appeal, if there's something wrong with them, we shouldn't be handcuffed by the attorney said. It looks reasonable when there's law maybe that says, but it's not. It's wrong. But you say that, and of course, obviously you want another chance, but we also have cases that say, if the district judge takes the time to make sure that whatever can be discussed at the trial court level is discussed, and somebody says they're reasonable, that's synonym for saying they're okay. We have no objection. They're fine. Sure. And then that's what waiver is. If Mr. Kadzai said, we have nothing to say or something, I mean, I suppose some sort of, or sometimes we don't have the question the way it's phrased here. Right now, it's clear that the court is asking about these discretionary conditions. When the judge right at the end before saying, and we're done, just says, hey, anything else people, we've said that's not good enough. That's not specific enough. But this is about the conditions. Sure. And suppose it was a 10-year maximum, and the judge said, I'm giving 15 years imprisonment. The lawyer said, that's reasonable. It's plain air. We're still going to be able to argue it, and I'll give you all the examples I just gave. I had to repeat them. But the problem is- But that's a different situation where the statutory cap, these are discretionary conditions. Now, if we can get into them, I do think you have a point, because it doesn't look clear to me that there was ever an oral pronouncement of the discretionary condition. So we don't have an oral judgment. And even though at one point, the alcohol condition had the little box defined as 0.08 checked, it didn't in the judgment. So we don't know there. We have no referent. And the guy doesn't drink. And the guy doesn't drink, so what's the utility of the condition? But Your Honor, I can only point again to CAPAS and to the cases that I mentioned. If in all those cases you agreed that the conditions were wrong, I mean, say that the lawyer agreed that the conditions were wrong, or that the enhancement applied, or the criminal history was correct, or the restitution was accurate, those people were not precluded from getting relief on the appeal. It wasn't waiver. It's not waiver here. The conditions are wrong. And the checking of the box may have satisfied it, but the box wasn't checked. The guy doesn't drink, so I have the condition. And then so far as about the location and where the person should visit, you have case law on this. There's both sides of that. We've been all over the block on these visitation conditions. I would like to have you just on the one side of the block that's good for us. I know, but there's the other side of the block. In which no sentence is ever final, right? Well, there has to be a one point because people stop drawing breaths. And in any event, Your Honor, if we had to rely on the U.S. Attorney's Office to argue into the sentence all of the conditions that we have to instead argue back out, this would be a better game to play. Because we've got people coming in looking at serious time and other issues, and you don't want to tick off judges. And yet we are then picking and choosing, trying to do what we can to defend our clients. And then there are things that limit their liberties, pose risks for reincarceration. It's because we adopt all these conditions. They all come in wholesale from the get-go, and then you're trying to contend with what you can. It's not a great way to do this, in my opinion. And we've talked way back since Siegel about imposing conditions at a later stage in the proceedings. When the person is released, and Your Honor, I think you're a practically minded person, it seems practical to wait and do it then. It's not an issue under appeal. It sure does, but I think you need Congress to reform the process for that. I don't think so. You impose the mandatory conditions, and you wait upon release, and you then have a 3553E hearing where you can modify conditions, add the conditions as necessary. You've got the guy who's been incarcerated for 10 years. You know what he needs. Maybe there are things that he doesn't need anymore because he got some help for a substance abuse problem. There are lots of things that can be done at the appropriate juncture, and you might avoid a lot of appeals here. And we don't do it this way. And instead, we've got people- But what the court is doing, I mean, in this case, one of the things that we had thought maybe was a reasonable ground is to get those conditions before both sides, well in advance of the sentencing hearing. Give people some time to read them, talk to your client, do whatever you need to do. That seems to be what happened here. Your Honor, but the defense is under the avalanche, and then you're digging out what you can to help out your client, and you're not wanting to aggravate the judge by contesting things  This alcohol thing, if he really is a teetotaler, you would have said, why put this in? It was in the record that he didn't drink, and the judge imposed the condition anyway, so I don't know what more you could have said on it. I mean, he figured that his experience with the criminal justice system would drive him to drink. I don't know. Well, that's, you know, a fair thing to remind you, Mr. Hillis, what was the crime that we're talking about here? False income tax returns. Well, he was another one of these 1041 trust returns, $300,000. And how did the sentence, the custodial sentence, compare to the guideline range? I can't recall his range. He didn't get a long sentence, but the guideline range wasn't very long either, Judge. I just don't recall off the top of my head, but, you know, that's. Okay, so why did he appeal this? Well, he tried at various points, it seemed to me, to not have this go forward, but nevertheless, we're here, and, you know, he's. What do you mean he tried not to have this go forward? I'll let Your Honor review the record, but he returned submissions, wrote things on them, the court found that it wasn't a voluntary dismissal, there was briefing that was argued, and here we are. I reject the balance of my time. Okay. All right, very good. Thank you. Looks like he just has 18 months custody. Good afternoon, Your Honors. Is that correct, Mr. Bindi, 18 months? Yes, Your Honor. The guideline range was 27 to 33 months, and the custodial sentence was 18 months. Okay, so a pretty insignificant sentence for stealing $386,000. About $386,000, including everything that was sent in by the IRS. Your Honors, the argument on appeal is not that any of these supervised release conditions is wrong. It's that they're unreasonable, and there's a difference. Well, it is unreasonable if he's a non-drinker to impose this, and by the way, don't drink, and not even to be clear, because you didn't, even though the PSR had the .08 limitation, and that didn't make it into the written sentence, and there's no oral pronouncement to fall back on. That's true, Your Honor, but there are more efficient ways to correct the fact that somebody overlooked checking a box on a form. Why isn't one of those ways remanding on this a limited remand to get the district judge to fix it, especially with somebody with such, he's already out, isn't he? He's done with his custodial sentence. Yeah, that's what I thought. He got out in February. Right. And the supervised release sentence is one year, so that'll be over with next February. But he, for whatever reason, is his right, thinks that it's worth complaining about the alcohol condition and the visitation condition, and it's certainly the case that our decisions on apparently identical facts come out both ways on work-related visitation conditions as being unreasonable or not unreasonable. Why does he need it as compared to anybody else? I'm sorry? Why does he need to have the probation officer visiting him at work, and other people don't need, you know, it's unreasonable for other people? Well, in this case, the probation officer proposed that condition. Yeah. It's not an extraordinary condition. So Ortiz says that this is, that it's unreasonable, right? Ortiz supports the proposition that requiring the defendant to submit to probation officer visits at work can be a problem. Right, and I'm trying to figure out when is it a problem. If you can give me a principled way to distinguish Ortiz from this case, that would be a start. Well, one way is the way that Bickert found, which was, this court's decision in Bickert, which was that if that condition is explicitly qualified by language stating that the probation officer is to make these visits at reasonable times. And it didn't Ortiz, too, didn't it? My recollection is no, it didn't. And that's what distinguished Bickert and Ortiz. That's what Bickert said about the condition in that case. No, I don't think so. It permitted a probation officer to visit the defendant at any reasonable time at home, at work, or at any other reasonable location specified by a probation officer. That's Ortiz. Okay, well, but Bickert says that... Bickert says the opposite. No, you're right about that. It's not casting a particularly bright light on us for doing that. But which way is right? Well, I think that the way that the court came out in Bickert acknowledges the fact, and this is, I think, explicit in the language in Bickert, that you can't operate the system on the assumption that probation officers are going to go out of their way to try and place the people under their supervision in situations where they're going to violate. The probation officers will try to be reasonable. It is in the interest of everyone that the defendant succeed on supervised release, and that his experience in working... We've seen some exceptions to those principles lately, but I don't disagree with you generally. And I think that what Bickert said in language and that opinion was general, and Your Honor, there are situations where that is not necessarily observed. But again, in terms of how we're going to look at this from a systemic view, the assumption has to be in favor of the actors performing in the system performing in a way that's conducive to the goals of the system. And the goal here of supervised release is for the defendant to be successful, and if employment is there for him, and if it's helping him to advance, then it's in the interest of the probation officers, and it's in everyone's interest that he be successful at that. I don't think that this condition is unreasonable, and especially in light of the defendant's waiver at the sentencing hearing where he agreed that all the conditions that the court intended to impose were reasonable, that this calls for a remand. As far as the alcohol condition goes, you know, again, somebody neglected to check a box on the floor. A pointless alcohol condition, right? I mean, it's just... I'm worried about an argument that says, if we put a sufficiently irrelevant condition into your supervised release order, then we don't worry about it. You know, don't fly to the moon tomorrow either. All right, so he's not going to fly to the moon. But what if somebody thinks he's preparing to fly to the moon, or he's at a party where people are talking about flying to the moon? Well, to the extent that this is a condition that is not necessary for this defendant because it's not supported by any facts or history, again, the Gabriel case points to a different path than vacating and remanding for a resentencing hearing, which can be costly. Why would it be costly? I mean, lately we've been doing more remands that just focus on the contested conditions, not a wholesale resentencing. And I don't understand him, given his position, since he's already finished with the custodial part of his sentence. I don't think he even wants a wholesale resentencing. Probably not. But, you know, again, that points along the lines of having this thing corrected by way of a motion in the district court. There's no reason to remand this case for even a limited resentencing hearing on a condition. For such a motion, his right to counsel is gone. Right now he has counsel. That's true. On the other hand, in this particular case, we also are in a situation where everything that could possibly be wrong with any of these conditions has been briefed by very able counsel, and he has that going forward. So my point is that a remand, even a limited remand for resentencing, even on just one aspect, is not as efficient as having him go forward with a motion in the district court, especially on a condition that, if he's right about being a non-drinker, is moot anyway. And so we would ask that this court affirm the judgment. Thank you. All right, thank you very much. Mr. Hillis? Your Honor, in the United States v. Monterico-Johnson, which I believe Judge Hamilton was one of the panelists on that, we said we don't require people to wait and to go back and to contest something that they can raise on the appeal now, and the lack of counsel was one of the reasons. We don't have to file motions. We can file appeals. That's what we've elected to do here. CAPAS requires clear conditions. The condition without excessive alcohol is not clear. It's easy to fix, and we would ask for a limited remand. But the focus the government has on whether the condition is unreasonable is a misguided approach. The condition has to be a not-greater-than-necessary restriction of an individual's rights and liberties under 18 U.S.C. 3583 D.2, and it's not about reasonableness. We are talking about rights and liberties. Those are, like, of constitutional import, and the condition then has to be the least restrictive means. And when you've got somebody who doesn't drink and the condition restricts your alcohol consumption, that is a restriction, and it's, by definition, then greater than necessary in a case like this. Same as for working someplace. If we can get by with no probation officer appearing at his work, which then doesn't interfere with his work, doesn't interfere with his ability to keep and do his job, then that's to his benefit, which then at the job reduces your rate of recidivism. Having probation officers at your work interferes with your right to work, which then, again, is a constitutional issue. 3583 D.2 would counsel against sending probation officers there. And the probation officer's concerns in administration aren't the paramount concern. It's the defendant's rights. The statute says so. So we recognize that probation officers are hardworking, want to do a good job, and typically do, but that's not the benchmark here. We look at what the statute requires and what the defendant's rights are, and in this case, we ask for a limited remand to make the modest corrections that we're seeking. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement, and the court will be in recess.